WWR#8670234

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION - FLINT

In Re: Patricia Huckin

               Debtor,

Case No. 10-33906
Chapter 7
Hon. Daniel S. Opperman

_____/

WELTMAN, WEINBERG & REIS CO., L.P.A
By:Jonathan Rosenthal, (P-66851)
Attorneys for Creditor
Honda Financial Services
2155 Butterfield Drive, Suite 200-S
Troy, Michigan 48084
248-362-6188
jrosenthal@weltman.com

Patrick Vincent McGivney
Attorney for Debtor
210 E. Main St.
Brighton, MI 48116
810-229-2971

_____/

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## AND TO WAIVE FOURTEEN-DAY STAY PURSUANT TO RULE 4001(A)(3)

Now comes, Honda Financial Services, by and through its attorneys, Weltman, Weinberg & Reis Co. L.P.A., and states the following as its Motion for Relief from Automatic Stay:

1. This action is commenced pursuant to 11 U.S.C. § 361, 362, 363 and other Sections of Title 11 of the Bankruptcy Code.

2. Debtor, Patricia Huckin, filed petition under 11 U.S.C., Chapter 7, on July 15, 2010.

3. Pursuant to the provisions of 11 U.S.C. § 362(a), the filing of the Debtor's petition operates as an automatic stay against Honda Financial Service's rights as a secured creditor to proceed against Debtor's property. (A copy of the Creditor's proposed Order is attached as **Exhibit A**).

4. On August 16, 2005, the Debtor herein did execute and deliver to the Movant a certain Motor Vehicle Closed-End Lease Agreement in the amount of $12,958.32. (A copy of the Motor Vehicle Closed-End Lease Agreement is attached hereto as **Exhibit B**), secured by a security interest in a 2005 HONDA PILOT, Motor Vehicle Identification Number or Serial Number 5FNYF18485B050765 (a copy of the Michigan Secretary of State Certificate of Title as recorded is attached hereto as **Exhibit C**).

5. There remains due and owing on the Motor Vehicle Closed-End Lease Agreement referenced in paragraph four hereof, the sum of $14,013.87 plus interest.

6. Creditor has not been adequately protected by periodic payments or otherwise since the filing of the Debtor's petition and there are arrearages of $1,109.19 as of the date of the filing of this Motion, for the months of May through July 2010, plus late charges.

7. Creditor believes that the Collateral has a value of $11,850.00 as evidenced by the attached **Exhibit D** and that Patricia Huckin may have no equity in the collateral that is the subject of its Motor Vehicle Closed-End Lease Agreement and that said property may be of inconsequential value to the estate.

8. Continuation of the automatic stay will work real and irreparable harm to Honda Financial Services and will deprive it of the adequate protection to which it is entitled for the following reasons, among others:

- Debtor may be without funds necessary to preserve and maintain the property in good condition. The condition of the collateral is decreasing.
- Interest continues to accrue on Honda Financial Services's claim, against Debtor and Debtor's contract is more than three months in arrears.

9. Creditor's counsel on August 24, 2010, contacted Debtor's counsel for concurrence on its Motion for Relief. To date, Creditor has neither received concurrence to its motion nor received a response from Debtor's counsel.

10. Honda Financial Services is entitled to relief from stay to recover possession of the property and liquidate its security interest.

11. Creditor is aware that Non-Filing Co-Owner, FHON WIZARDS LIN. LSE, has a lien interest in the above-mentioned property.

12. Creditor is informed and believes that no other party has an interest in the collateral above.

13. Honda Financial Services specifically requests that the fourteen-day stay pursuant to Rule 4001(a)(3) prior to enforcement of the order requested herein be waived; such grace period is designed solely for appeal purposes, and an appeal in this matter would be frivolous and without merit.

WHEREFORE, Honda Financial Services prays this honorable Court Order that the automatic stay be lifted so as to permit Honda Financial Services to proceed to enforce its security interest in the property.

        Respectfully submitted,
        **WELTMAN, WEINBERG & REIS CO., L.P.A.**

Dated: August 25, 2010

    By:  /S/ Jonathan Rosenthal
        Jonathan Rosenthal, (P-66851)
        Attorneys for Creditor
        Honda Financial Services
        2155 Butterfield Drive, Suite 200-S
        Troy, Michigan 48084
        248-362-6188
        jrosenthal@weltman.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION - FLINT

In Re: Patricia Huckin

                Debtor,

Case No. 10-33906
Chapter 7
Hon. Daniel S. Opperman

/

WELTMAN, WEINBERG & REIS CO., L.P.A
By: Jonathan Rosenthal, (P-66851)
Attorneys for Creditor
Honda Financial Services
2155 Butterfield Drive, Suite 200-S
Troy, Michigan 48084
248-362-6188
jrosenthal@weltman.com

Patrick Vincent McGivney
Attorney for Debtor
210 E. Main St.
Brighton, MI 48116
810-229-2971

/

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND WAIVING THE FOURTEEN-DAY STAY PURSUANT TO RULE 4001(a)(3)

The Court finding that a Motion for Relief from the Automatic Stay has been filed by Creditor, Honda Financial Services, in the above entitled matter; and the Court finding that L.B.R. 9014-1 (c) provides for entry of an Order if a response has not been filed within 14 days after service of the Motion on the parties; and

the Court finding that no response has been within 14 days, and the Court having noted that Creditor Honda Financial Services has complied with applicable provisions of L.B.R. 9013(c) and L.B.R. 4001.1, and

the Court having determined that continuation of the automatic stay against Creditor Honda Financial Services would deny it the adequate protection afforded to it on its security interest pursuant to 11 U.S.C. § 361(3);

**IT IS HEREBY ORDERED** that the Motion for Relief from the Automatic Stay as to Honda Financial Services is hereby granted.

**IT IS FURTHER ORDERED** that the Automatic Stay as to Honda Financial Service's lien interest in a 2005 HONDA PILOT, Motor Vehicle Identification Number/Serial Number 5FNYF18485B050765 is lifted and Honda Financial Services (8670234) is permitted to enforce its security interest and liquidate the property. Any surplus remaining after the sale of the property shall be turned over to the Trustee.

**IT IS FURTHER ORDERED** that the fourteen-day stay imposed by Rule 4001(a)(3) is hereby waived.

**IT IS FURTHER ORDERED** that this Order shall remain valid notwithstanding conversion of this case to any other chapter under the Bankruptcy Code.

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction over all matters relating to enforcement of this order.

**Closed-End Vehicle Lease Agreement — Michigan**

Lease Date: 08/16/2005

| LESSEE(S) (Full Name & Address) | VEHICLE GARAGING ADDRESS (if different) | LESSOR (Dealer) |
|---|---|---|
| TRIM WIZARDS INC<br>4523 OLD US 23 #107<br>BRIGHTON<br>MI 48114<br>LIVINGSTON | Name of Driver<br>Street Address<br>City<br>State, Zip<br>County<br>Driver Phone Number | BRIGHTON HONDA<br>8294 WEST GRAND RIVER<br>BRIGHTON, MI<br>48114<br>Dealer Number |

By signing this Lease, Lessee(s) ("I", "my", "me") agree to lease the Vehicle, described below, according to the terms on both sides of this Lease. I accept delivery of the Vehicle and acknowledge that it is in good operating order, equipped as described and has the odometer reading recorded below. "Lessor" refers to the Lessor ("Dealer") named above and Assignee. American Honda Finance Corporation (AHFC) will administer this Lease.

Assignee: **HONDA LEASE TRUST**  LEASE TERM: 36 MONTHS

### VEHICLE DESCRIPTION

| New/Used | Year/Make/Model | Body Style | Vehicle Identification Number | Odometer Reading | Primary Use: |
|---|---|---|---|---|---|
| NEW | 2005 HONDA PILOT | UT | 5FNYF18485B050765 | 137 | ☐ Personal, Family, or Household<br>☐ Business, Commercial, Agricultural, or Lessee is an organization or governmental entity |

Including Standard Manufacturer Installed Features (unless replaced by upgraded equipment) and the Following Dealer Installed Options:
___ Air Conditioning  ___ Leather Interior  ___ Power Moonroof  ___ Custom Wheels  ___ Rear Wing Spoiler  ___ Alarm System
Audio System Includes:  ___ AM/FM Stereo  ___ AM/FM Stereo with Cassette Player  ___ Cassette Player  ___ CD Changer  ___ CD Player
Other Dealer Installed Options: _____

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

$ 627.12 ... followed by __ payments of $ 352.12 due on the 16TH of each month. ... Disposition Fee (if I do not purchase the Vehicle)... $ 0
total of my monthly payments is $ 12676.32
My single payment of $ N/A as due on N/A
Total... $ 0    $ 12951.32

### ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING

**Amount Due at Lease Signing**

| Item | Amount |
|---|---|
| Capitalized Cost Reduction (Amount Paid in Cash) | $ N/A |
| Sales/Use Tax on Amount Paid In Cash | + N/A |
| Capitalized Cost Reduction (Credit for Net Trade-In Allowance) | + N/A |
| Sales/Use Tax on Credit for Net Trade-in Allowance | + N/A |
| Advance Monthly Payment (1st Month) | + 352.12 |
| Advance Single Payment (if Single Payment Lease) | + N/A |
| Refundable Security Deposit | + N/A |
| Initial Title Fees | + 15.00 |
| Initial Registration Fees | + 161.00 |
| Other: U.S. Luxury Tax | + N/A |
| Other: DOC FEE | + 99.00 |
| Other: | + N/A |
| **TOTAL** | = $ 627.12 |

**How the Amount Due at Lease Signing will be Paid**

| Item | Amount |
|---|---|
| Credit for Net Trade-In Allowance Year N/A Make N/A | $ N/A |
| Rebates: | + N/A |
| Noncash Credits: | + N/A |
| Amount Paid By: | + N/A |
| Amount to be Paid in Cash: | + 627.12 |
| **TOTAL** | = $ 627.12 |

RECEIVED AUG 18 2005 AT BRANCH 105

### MY MONTHLY PAYMENT/SINGLE PAYMENT IS DETERMINED AS SHOWN BELOW:

GROSS CAPITALIZED COST  $ 28456.81  For an itemization of this amount, please check this box: ☐
The agreed upon value of the Vehicle ($ 27861.81) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance).

CAPITALIZED COST REDUCTION  N/A  The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the gross capitalized cost.

ADJUSTED CAPITALIZED COST  = 28456.81  The amount used in calculating my base monthly or single payment.

RESIDUAL VALUE  − 18687.35  The estimated value of the Vehicle at the scheduled end of the Lease Term used in calculating my base monthly or single payment.

DEPRECIATION AND ANY AMORTIZED AMOUNTS  = 9769.46  The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.

RENT CHARGE  + 2189.38  The amount charged in addition to the depreciation and any amortized amounts.

TOTAL OF BASE PAYMENT(S)  = 11958.84  The depreciation and any amortized amounts plus the rent charge.

LEASE PAYMENTS  ÷ 36  The number of payments required during the term of my Lease.

B

[...] I may have to pay a substantial charge [...] the earlier I end the Lease, the greater this charge is likely to be.

**EXCESSIVE WEAR AND USE.** I may be charged for excessive wear based on Lessor's standards for normal use and for mileage in excess of 12,000 miles per year at the rate of 15 cents per mile.

**PURCHASE OPTION AT END OF LEASE TERM.** I have an option to purchase the Vehicle AS-IS, WHERE-IS at the end of the Lease Term for $ 18627.35 , plus any required taxes and fees.

**OTHER IMPORTANT TERMS.** Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

## PAYMENT SCHEDULE

I agree to make payments to Lessor according to the schedule shown above. The first payment is due on the Lease Date. The second payment is due no later than 34 days after the Lease Date and must be on or between the **1st** and **28th** of the month. If the total monthly payment includes sales or use tax, this payment amount may vary to the extent of any tax increase or decrease. I will not change or stop any Lease payments for any reason, even if the Vehicle is stolen, destroyed, seized by a governmental authority or experiences mechanical problems.

## LATE CHARGE / RETURNED CHECK CHARGE

I will pay a late charge equal to the lesser of **$25** or **5%** of the unpaid portion on any payment that is not received within **10** days after it is due, or such lesser amount as set by law. I will also pay a **$25** charge for any check or similar instrument returned for any reason.

## VEHICLE WARRANTIES

If the Vehicle is new, it is covered by the Manufacturer's New Vehicle Warranty. If the Vehicle is new or used, it is not covered by a warranty unless identified below:

☐ Remainder of Manufacturer's New Vehicle Warranty.
☐ Manufacturer's Used Vehicle Limited Warranty.
☐ Manufacturer's Extended Warranty.
☐ Other: _____

Lessor assigns to me all of its rights in the above specified warranties. LESSOR LEASES THE VEHICLE "AS-IS" AND MAKES NO WARRANTIES, EXPRESS OR IMPLIED, REGARDING THE VEHICLE AND SPECIFICALLY DISCLAIMS ANY WARRANTIES IMPLIED BY LAW, INCLUDING WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE.

## OPTIONAL SERVICE CONTRACT

An optional service contract promises to perform services or provide benefits relating to the maintenance or repair of the Vehicle. These coverages are not provided by the Lessor. I must pursue all matters relating to these coverages through the provider. The terms and conditions for these coverages are in a separate contract, which I have read and received.

Price: $ N/A   Provider: _____
Price: $ N/A   Provider: _____

If the price of any service contract is not included in the amount due at lease signing, the price will be included in the Gross Capitalized Cost and will be subject to rent charges.

## OTHER CHARGES

I understand that the "Other Charges" and "Total of Payments" boxes above do not reflect amounts collected on behalf of third parties (such as property taxes, fines, fees, etc.) or charges imposed if I fail to abide by, or modify the terms of this Lease. I am also responsible for these amounts and will refer to all other terms and conditions of this Lease for a description of all charges due.

## ESTIMATED FEES AND TAXES DURING LEASE TERM

I agree to pay when due or reimburse Lessor for all title/license/registration/official fees and taxes over the term of my Lease (including any extensions), whether paid at lease signing, included in my monthly payments or assessed otherwise. Lessor estimates this amount to be: ............ $ 1344.48

The actual total of fees and taxes may be higher, or lower, depending upon whether the garaging address of the Vehicle changes, and on the tax rates in effect, or the value of the Vehicle at the time a fee or tax is assessed. Some taxes and fees may come due after the Lease terminates. I agree to pay any such amounts within **10** days of being invoiced. I will be responsible for any fines or penalties if I fail to pay the bill when due.

## VEHICLE INSURANCE

I will pay for and maintain during the Lease term, and until the Vehicle is returned to Lessor, insurance on the Vehicle which has the following minimum coverages: (1) Public Liability Insurance that either covers up to **$100,000** for bodily injuries to any one person, **$300,000** for bodily injuries for any one accident, and **$50,000** for property damage, or has a combined single limit of **$300,000** for bodily injuries and property damage for any one accident; and (2) Physical Damage Insurance covering loss or damage to the Vehicle, with deductibles of no more than **$1,000** for collision and upset loss and **$1,000** for comprehensive fire and theft loss.

The Policy of Public Liability Insurance must show Assignee as an additional insured. The policy of Physical Damage Insurance must show Assignee as loss payee. I may choose to get the required coverages myself or through any person. The policies must be written by an insurance company acceptable to Lessor. I agree to provide written proof of insurance to Lessor upon request, and authorize Lessor, and its agents, to contact my insurance agent and insurance company to verify coverage as required by this Lease. I further authorize Lessor to endorse my name(s) on any check or draft from my insurance company for any claim. Lessor may change the amounts of required insurance. I acknowledge that the limits required under this Lease may not be sufficient for my needs, and will see my insurance agent for more information.

All insurance related information must be addressed to the Assignee, c/o PDP Services, P.O. Box 650201, Hunt Valley, Maryland 21065-0201.

MICHIGAN MILLERS    110100640
Insurance Company Name    Policy Number

SCHULTZ AGENCY    8102296158
Agent Name    Agent Telephone

___ W. GRAND RIVER    BRIGHTON, MI    48116
Agent Address    City    State    Zip Code

**NOTICE TO LESSEE(S):** The Early Termination payoff balance of the motor vehicle as determined by the Lessor may be different than the actual cash value of the motor vehicle as determined by the Insurer of the Vehicle.

**NOTICES TO LESSEE(S):** (1) CAUTION — IT IS IMPORTANT THAT I THOROUGHLY READ THIS AGREEMENT BEFORE I SIGN IT. (2) I WILL NOT SIGN THIS AGREEMENT BEFORE I READ BOTH SIDES OF IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (3) I AM ENTITLED TO AN EXACT COPY OF THE LEASE I SIGN. I WILL KEEP IT TO PROTECT MY LEGAL RIGHTS. BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE READ BOTH SIDES AND RECEIVED A COMPLETED COPY OF THIS LEASE AGREEMENT.

LESSEE: Fbon Wizards, Inc.    BY: [signature]    TITLE: President

LESSEE: _____    BY: _____    TITLE: _____

Lessor accepts this Lease and assigns all right, title, and interest in this Lease and the Vehicle described herein, and Lessor's rights under any guaranty signed in connection with this Lease, to Assignee.

Lessor (Dealer): BRIGHTON HONDA    By: [signature]    Title: [signature]

SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS

**VEHICLE MAINTENANCE AND OPERATING COSTS:** I will maintain the Vehicle in good working order and condition and have all necessary service performed using genuine manufacturer's replacement parts. I will pay all expenses for Vehicle use and operation, including maintenance, repair, fluids, tires, and other expenses. At my expense, I will have the Vehicle serviced in accordance with the manufacturer's minimum recommendations and as requested by the manufacturer in connection with any recall campaign, have the service validated, and be able to provide proof that such service has been performed. Lessor may inspect the Vehicle at any reasonable time.

**USE:** I will notify my insurance company and AHFC immediately of any damage to or loss of the Vehicle, and will cooperate following any such incident. I will not: (a) allow unlicensed drivers to operate the Vehicle; (b) use or allow the Vehicle to be used illegally, improperly, or to transport goods or people for pay; (c) use the Vehicle in a way that causes the manufacturer's warranty to become void; (d) use the Vehicle to tow loads that exceed the manufacturer's trailer towing recommendations; (e) remove the Vehicle from the 48 contiguous United States without AHFC's written consent; or (f) change, mark or install equipment in the Vehicle without AHFC's written consent.

**REGISTRATION:** I will register the Vehicle, as required in the state where the Vehicle is garaged and pay for all license, title and registration costs. If I move or change the Vehicle's garaging address, I will notify AHFC immediately and pay for all resulting taxes and title, registration or other fees.

## ENDING MY LEASE

**PURCHASE OPTION PRIOR TO THE END OF LEASE TERM:** I have the option to purchase the Vehicle **AS IS, WHERE IS** at any time (unless a governmental agency has seized the Vehicle and instructed Lessor not to release the Vehicle to me). This purchase option may be exercised only by the Lessee. If I choose to purchase the Vehicle prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (defined below), plus (i) any payments or other charges due and unpaid under this Lease (except excess mileage and excessive wear and use charges) and (ii) any taxes or fees required by law in connection with the purchase. The Adjusted Lease Balance is the unamortized portion of the Adjusted Capitalized Cost, determined on an Actuarial basis, where earnings are accrued on the first day of every period. Lessor will provide a written explanation of the Actuarial method used to determine the Adjusted Lease Balance upon request. I will re-register and re-title the Vehicle in my name at the time I purchase it. If I fail to do so, Lessor may cancel the registration.

**NOTICE:** By exercising the Purchase Option under the Lease, I acknowledge that Lessor's obligations to sell such Vehicle to Honda Finance Exchange pursuant to the Sub-Servicing and Master Exchange Agreement between AHFC and Honda Finance Exchange, Inc. **Notice is hereby given that all of the rights (but not the obligations) to sell the Vehicle have been assigned to Honda Finance Exchange, Inc. pursuant to such Master Exchange Agreement.**

**EARLY LEASE LIABILITY:** If I decide to terminate this Lease early, I will return the Vehicle to Lessor on the due date of a monthly lease payment. I will owe Lessor: (a) any monthly payments already due and unpaid and any other amounts owed arising from my failure to keep promises under this Lease; plus (b) any official fees and taxes imposed in connection with the termination; plus (c) the amount, if any, by which the then Adjusted Lease Balance (determined as described above) exceeds the Realized Value of the Vehicle, described below, at early termination. Lessor may terminate this Lease at any time if the Lease is in default, in which case I also agree to pay Lessor's costs of repossessing, storing and transporting the Vehicle as well as Lessor's costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law.

**DETERMINATION OF REALIZED VALUE OF THE VEHICLE:** The Realized Value of the Vehicle upon early termination will be determined in one of the following ways: (a) by written agreement between Lessor and me, provided it is signed within 10 days after I return the Vehicle to Lessor; (b) by a professional appraisal of the wholesale value of the Vehicle, if I choose to obtain one at my sole expense within 10 days after returning the Vehicle to Lessor. The appraisal must be made by an independent third party who is acceptable to Lessor and to me, the appraised value will then be the Realized Value; or (c) if the Realized Value is not determined by (a) or (b) above within 10 days after I return the Vehicle to Lessor, Lessor will proceed to sell the Vehicle at wholesale in a commercially reasonable manner. The net sale price, less any fees and taxes imposed upon Vehicle disposition, will be the Realized Value.

**IF THIS IS A SINGLE PAYMENT LEASE:** The Advance Single Payment amount is calculated based on the fact that I pay all periodic payments due under this Lease at its inception, and on the assumption that it will go full term. If the Lease is terminated early, the Lease will be treated as one which calls for monthly payments, each in the amount of the Advance Single Payment divided by the number of months in the Lease Term. Then my early termination liability will be calculated in the manner set forth under Early Termination Lease Liability.

**SCHEDULED END OF LEASE LIABILITY:** If none of us elects to purchase the Vehicle at the end of the Lease, my payment liability at that time will be the sum of: (a) any monthly lease payments already due and unpaid already; plus other amounts arising from my failure to keep my promises under this Lease; plus (b) any Excessive Wear and Use amounts, defined below; plus (c) any excess mileage charges; plus (d) any official fees and taxes imposed in connection with Lease termination.

**EXCESSIVE WEAR AND USE/EXCESS MILEAGE:** If I do not purchase the Vehicle at Lease end and subject to the limited waiver below, I will reimburse Lessor for the amount it would cost Lessor to repair excessive wear to the Vehicle, whether or not Lessor makes the repair. Excessive wear and use includes: (a) missing or unsafe accessories (including missing devices); (b) damaged body, fenders, metal work, lights or trim; (c) broken glass, (d) paint which is chipped; (e) interior rips, stains or burns; (f) excessive wear to areas; (g) missing or unsafe wheels or tires (including spare tire) with less than 1/8th inch of tread remaining at the shallowest point; (h) damage or any other condition that makes the Vehicle unsafe or unlawful to operate; or (i) safety and emission control equipment not in proper working order. I also agree to pay for any excess mileage charge as stated in the paragraph entitled "Excessive Wear and Use."

**LIMITED EXCESSIVE WEAR AND USE WAIVER:** Upon compliance with all terms and conditions of this Lease at the scheduled Lease end (including, without limitation, payment obligations and insurance requirements), Lessor agrees to waive Excessive Wear and Use Charges caused by one or more single events, each of which total less than $500 to repair, up to a maximum of $1500, waived. **I remain responsible for the cost of any damage arising from any single event that would cost $500 or more to repair, and for Excessive Wear and Use Charges exceeding $1500.** A "single event" is a single occurrence that results in damage to the Vehicle. A single occurrence may result in damage to multiple areas of the Vehicle (as in front, end back, or both sides), but would be considered a single event for purposes of this limited waiver.

**RETURN OF THE VEHICLE:** Whether the Lease is terminated early or as scheduled, I agree to return the Vehicle to the Dealer's address as shown on this Lease or to any address AHFC specifies. If I keep possession of the Vehicle past the Lease end date, I agree to continue to make monthly payments. I agree to pay for any damages that Lessor may suffer because I failed to return the Vehicle at Lease termination.

**ODOMETER DISCLOSURE STATEMENT:** On termination of this Lease (or upon election to purchase the Vehicle), I agree to provide a signed written disclosure to Lessor of the correct odometer mileage on the Vehicle, as required by federal law. I agree to pay Lessor for any loss, claims, damage, costs and expenses (including legal expenses) which result from my failure to promptly provide Lessor with a correct written odometer disclosure statement.

## DEFAULT OR LOSS OF THE VEHICLE

**DEFAULT:** I will be in default if: (a) I fail to make any payment when due under this Lease; (b) a bankruptcy petition is filed by or against me; (c) a proceeding in receivership is filed against me or my property, or I make an assignment for the benefit of creditors; (d) I fail to comply with the insurance requirements of this Lease; (e) I do not repair or maintain the Vehicle as the Lease requires; (f) the ... (e) apply my security deposit to any amounts I owe; and (f) pursue any other remedy permitted by law. All of Lessor's rights are cumulative and the taking of any action will not prevent the taking of any other action. I also agree to pay Lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs Lessor incurs to the extent permitted by law.

## ADDITIONAL INFORMATION

**OWNERSHIP:** This is a lease agreement. Lessor owns the Vehicle. I agree that this Lease is a true Lease for tax and other purposes and that Lessor will have the benefits of ownership. Lessor has not given me any information or advice regarding the tax treatment or benefits under this Lease.

**LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in. If that payoff is more than the amount shown on this Lease, I will pay Lessor the excess amount upon demand.

**NOTICES/NO WAIVER:** I agree to notify Lessor within 30 days of any change in my address. Unless I notify Lessor in writing of any change in my address, any notices Lessor sends me are sufficient if sent to my address shown on this Lease. Lessor can waive or delay the enforcement of its rights as to any person signing this Lease without affecting its rights as to any other person signing this Lease. I also agree that Lessor can release any signer from his or her obligations without releasing any other signer from their obligations.

**SECURITY DEPOSIT:** ... will be refunded to me in the event Lessor has not been billed for personal property taxes for the Vehicle for the year (or part thereof) in which the Lease terminates. I authorize Lessor to retain a portion of the security deposit estimated to cover any personal property tax allocation for such year and apply it to the tax when due. No interest, increase or profits will accrue or be paid to me on the security deposit.

**SECURITY INTEREST:** Further, I authorize AHFC on my behalf, to settle any claim under the insurance related to Lessor's ownership of the Vehicle, to receive and endorse any checks or drafts representing premium rebates and/or proceeds of such insurance, and to apply such amounts to my obligations under this Lease. AHFC may make and receive claims for all proceeds paid or payable under any service contract purchased under this Lease for application to my obligations under this Lease. In the event I am in default under this Lease, AHFC may cancel any service contracts and receive any funds paid or payable as a rebate, refund, return or otherwise.

**ASSIGNMENT:** ... the Vehicle or my right to use the Vehicle. This Lease will be assigned to the Assignee identified on the other side. AHFC will administer this Lease. I agree to make all payments and perform all other obligations under this Lease to AHFC. I acknowledge that AHFC (and Assignee, if different) will not have to make any repairs, maintain the Vehicle or perform any of Dealer's duties under this Lease. AHFC has the power to act on behalf of Assignee to administer, enforce and defend this Lease.

**CREDIT REPORTING:** ... reinvestigate any information provided on my credit application and to verify my current credit standing and, in the course of doing so, request and receive credit bureau reports. If I default under this Lease, I authorize AHFC and its affiliates to make any credit inquiries AHFC and its affiliates deem appropriate, and understand that ... credit reporting agency. I authorize AHFC and its affiliates to share credit, account and financial information about me at any time, except to the extent I have instructed you otherwise.

**MODIFICATIONS/GOVERNING LAW:** This Lease sets forth all of the agreements between Lessor and Lessee for the Lease of the Vehicle, and no modification of this Lease shall be valid unless it is made in writing and signed by Lessor and Lessee. If any provision of this Lease is unenforceable or invalid, that provision shall be severed from the remainder of the Lease and the validity and enforceability of the remaining provisions shall not be affected or impaired. This Lease is to be governed by the laws of the state of Dealer's business.

**REIMBURSEMENT AGREEMENT:** I agree that I will reimburse Lessor from any loss or damage to the Vehicle and will indemnify Lessor from all claims, losses, and costs related to the use, maintenance or condition of the Vehicle. If ... on the Vehicle, I agree to repay the amount to Lessor immediately upon demand. If I do not pay, I will reimburse Lessor and pay a $20 administrative fee, unless prohibited by law, for every such fine, ticket, penalty or other charge paid on my behalf.

**PLEASE SEPARATE ALL COPIES BEFORE SIGNING GUARANTY. ORIGINAL SIGNATURES REQUIRED ON ALL PARTS.**

**GUARANTY:** I/We jointly and severally guaranty payment of all amounts owed under this Lease. This means that if the Lessee(s) fails to pay any money owed, I/We will pay it. Upon default under the Lease, Lessor may proceed immediately against me/us for payment, without first proceeding against the Lessee(s), any other guarantor or any security. I/We also will be liable for all fees, including attorneys' fees, that the Lessor incurs in enforcing the Lease or this guaranty. My/Our guaranty of payment is unconditional, and will not be affected by any settlement, extension, renewal or amendment of the Lease, or the release of any person or security. I/We waive all notices of every kind and nature and also waive all rights to demand and presentment.

| Co-Signer/Guarantor Signature | Print Name | Co-Signer/Guarantor Signature | Print Name |
|---|---|---|---|
| _(signed)_ BRIGHTON | | _(signed)_ | |

**SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS**

# STATE OF MICHIGAN
## CERTIFICATE OF TITLE

73340683

| YEAR | MAKE | MODEL | VEHICLE IDENTIFICATION NUMBER |
|------|------|-------|-------------------------------|
| 2005 | HONDA | PILOT | 5FNYF18485B050765 |

| BODY STYLE | WEIGHT/FEE CATEGORY | ODOMETER | ISSUE DATE | TITLE NUMBER |
|------------|---------------------|----------|------------|--------------|
| STA-WAGON | 30 | 000137 *ACTUAL MILEAGE* | 08/22/2005 | 236S2310045 AS |

**OWNER(S) NAME AND ADDRESS**

HONDA LEASE TRUST LSR
FHON WIZARDS INC LSE
4023 S OLD US 23 STE 107
BRIGHTON MI 48114

**First Secured Party**
HONDA LEASE TRUST
P O BOX 5308
ELGIN IL 60121

Filing Date: 08-19-2005

Release of First Lien:
X _____
Signature of Agent    Date

## Title Assignment by Seller

State and federal laws require the seller(s) to indicate mileage when ownership is transferred. Failure to complete or providing false information may result in civil liability, fines and/or imprisonment. ANY ALTERATION, ERASURE, FALSE STATEMENT, FORGERY OR FRAUD VOIDS THIS TITLE AND IS A CRIME.

I warrant that the ownership of the vehicle described on Certificate of Title has been transferred to the following purchaser(s) and is free of all previous liens:

| Printed Name of Purchaser(s) | | Date of Sale | Selling Price |
| Purchaser's Street Address | City | State | Zip |

I (we) certify that the odometer reading is: ☐☐☐☐☐☐ ☒ (No Tenths) and that to the best of my knowledge the odometer mileage is:
☐ actual mileage ☐ not actual mileage - WARNING ODOMETER DISCREPANCY ☐ exceeds mechanical limits of odometer (odometer has rolled over)

| Signature of Seller(s) X | Printed Name of Seller(s) |
| Seller's Street Address | City | State | Zip |

A $15.00 Late Fee is Due for Failure to Apply for Title Within 15 Calendar Days of Date of Assignment
"I am aware of the above odometer certification made by the seller(s)"

| Signature of Purchaser(s) X | Printed Name of Purchaser(s) |

NEW LIENHOLDER INFORMATION: The information below must be on an application for title and presented to the Michigan Department of State.

| Secured Party: | Address: |

The State of Michigan, Michigan Department of State certifies that this certificate of title is issued in compliance with the laws of Michigan and constitutes prima facie proof of ownership. Further, on the date of title issuance, the described vehicle was subject to the security interest(s) listed above.

**MAILING ADDRESS**

HONDA LEASE TRUST
PO BOX 5308
ELGIN IL 60121



G54714318

**NOTICE TO SELLERS**
Sellers should keep a receipt or photocopy of the reassigned title for their records.

DO NOT ACCEPT TITLE SHOWING ANY ERASURES, ALTERATIONS OR MUTILATIONS



# NADA Official Used Car Guide
## Tuesday, August 17, 2010

## Vehicle Summary NADA Values

| **Region:** | Central - August 2010 | **Reference #:** | |
|---|---|---|---|
| **Vehicle Description:** | 2005 HONDA Pilot-V6 Utility 4D EX 4WD | **VIN:** | 5FNYF18485B050765 |
| **MSRP:** | $29,920 | **Weight:** | 4,431 |
| **Mileage:** | 77,500 | | |

| | Rough Trade-In | Average Trade-In | Clean Trade-In | Clean Loan | Clean Retail |
|---|---|---|---|---|---|
| **Base Value** | $10,625 | $11,850 | $12,850 | $11,575 | $15,775 |
| **Optional Equipment** | | | | | |
| **Option Total** | $0 | $0 | $0 | $0 | $0 |
| **Mileage Adjustment** | $0 | $0 | $0 | $0 | $0 |
| **Total NADA Official Used Car Guide Values** | $10,625 | $11,850 | $12,850 | $11,575 | $15,775 |



NADA assumes no responsibility or liability for any errors or omissions
or any revisions or additions made by anyone on this report.
All NADA values are reprinted with permission of
NADA Used Car Guide, NADASC.

WWR# 8670234

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION - FLINT

In Re: Patricia Huckin

          Debtor,

Case No. 10-33906
Chapter 7
Hon. Daniel S. Opperman

_____/

WELTMAN, WEINBERG & REIS CO., L.P.A
By: Jonathan Rosenthal, (P-66851)
Attorneys for Creditor
Honda Financial Services
2155 Butterfield Drive, Suite 200-S
Troy, Michigan 48084
248-362-6188
jrosenthal@weltman.com

Patrick Vincent McGivney
Attorney for Debtor
210 E. Main St.
Brighton, MI 48116
810-229-2971

_____/

## NOTICE OF MOTION FOR RELIEF FROM AUTOMATIC STAY
## TO THE DEBTOR/RESPONDENT:

**Your rights may be affected.** You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one).

If you do not want the court to Lift the Automatic Stay as to Creditor, Honda Financial Services, or if you want the court to consider your views on the Motion for Relief from Automatic Stay, within 14 days you or your attorney must:

1.    File with the court a written response or an answer, explaining your position at:[1]

    United States Bankruptcy Court
    226 West 2nd Street
    Flint, MI 48502

---

[1] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e)

If you mail your response to the court for filing, you must mail it early enough so the court will **receive** it on or before the date stated above.

You must also mail a copy to:

WELTMAN, WEINBERG & REIS, CO., L.P.A
Attention: Jonathan Rosenthal, Esq.
2155 Butterfield Drive, Suite 200-S
Troy, Michigan 48084

Samuel D. Sweet
Trustee
PO box 757
Ortonville, MI 48462

2. If a response or answer is timely filed and served, the clerk will schedule a hearing on the motion and you will be served with a notice of the date, time and location of the hearing.

**If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion and may enter an order granting that relief.**

        Respectfully submitted,
        **WELTMAN, WEINBERG & REIS CO., L.P.A.**

Dated: August 25, 2010

        By: /S/ Jonathan Rosenthal
           Jonathan Rosenthal, (P-66851)
           Attorneys for Creditor
           Honda Financial Services
           2155 Butterfield Drive, Suite 200-S
           Troy, Michigan 48084
           248-362-6188
           jrosenthal@weltman.com